UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL ROUSSEAU,

       Plaintiff,                    CIVIL ACTION NO. 04 CV 73726 DT

      v.                            DISTRICT JUDGE NANCY G. EDMUNDS

JO ANNE B. BARNHART,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Social Security Disability case comes before the court on the parties' cross-motions motion for summary judgment. For the reasons stated herein, the court recommends that plaintiff's motion be **GRANTED, IN PART,** that the Commissioner's motion be **DENIED**, and that the matter be remanded for further proceedings.

### II.  Background

Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on February 14, 2002, claiming that she was disabled due degenerative disc disease, osteoarthritis, Type-II diabetes, diabetic retinopathy, and torticollis, with a disability onset date of June 11,

1999.[1]  (Tr. 43, 57)  Plaintiff was 56 years of age when she filed the application.[2]  The Social Security Administration (SSA) denied the claim on June 2, 2002.  (Tr. 29-32)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 33)  The hearing was held on February 20, 2004, before ALJ Douglas M. Jones.  (Tr. 263-302)  On February 24, 2004, the ALJ issued a decision denying plaintiff's claim.  (Tr. 12-26)  The ALJ determined that plaintiff had degenerative disc disease of the lumbar and cervical spines, idiopathic cervical torticollis, diabetes mellitus, non-proliferative diabetic retinopathy with non-cystoid macular edema OU status post macular laser photocoagulation surgery, macular chorioretinal scarring OU, hypertension, obesity, and status post cholecystectomy.  (Tr. 20, 23)  The ALJ further determined that plaintiff's impairment were "severe" within the meaning of 20 C.F.R. § 404.1520, but that she did not have an impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations.  Id.  Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff's impairments did not prevent her from performing her past work as a library clerk.  (Tr. 23)  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  (Tr. 24)

---

[1] The disability onset date was subsequently amended to October 1, 2000.  (Tr. 42).

[2] Plaintiff filed a prior DIB application on June 27, 2000.  The State of Michigan Disability Determination Service denied the application on October 26, 2000.  Plaintiff apparently did not pursue the application any further, and the ALJ declined to reopen it.  Accordingly, the claim period for the purposes of the present application commenced on October 27, 2000.  (Tr. 15).

Following the ALJ's denial of her application, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 9-11)  The Appeals Council denied the request on August 5, 2004. (Tr. 5-8)  The ALJ's decision thus became the final decision of the Commissioner.  On September 24, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends in her motion that the ALJ erred in concluding that she was capable of performing her past relevant work as a library clerk because the record establishes that her vision is sufficiently impaired so as to preclude the performance of such work.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

>   vacancy exists for him, or whether he would be hired if he applied
>   for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

>   The claimant must first show that she is not engaged in substantial
>   gainful activity.  Next the claimant must demonstrate that she has a
>   "severe impairment."  A finding of "disabled" will be made at the
>   third step if the claimant can then demonstrate that her impairment
>   meets the durational requirement and "meets or equals a listed
>   impairment.  If the impairment does not meet or equal a listed
>   impairment, the fourth step requires the claimant to prove that she
>   is incapable of performing work that she has done in the past.
>   Finally, if the claimant's impairment is so severe as to preclude the
>   performance of past work, then other factors, including age,
>   education, past work experience, and residual functional capacity
>   must be considered to determine if other work can be performed.
>   The burden shifts to the Commissioner at this fifth step to establish
>   the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

>   Any individual, after any final decision of the Commissioner of
>   Social Security made after a hearing to which he was a party,
>   irrespective of the amount in controversy, may obtain a review of
>   such decision by a civil action commenced within sixty days after
>   the mailing to him of notice of such decision or within such further
>   time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV.  Analysis

At the fourth step of the disability determination process, the ALJ made the following findings regarding plaintiff's residual functional capacity (RFC):

> [T]he record as a whole established that no period of 12 consecutive months elapsed during which the claimant lacked the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567 that involved "occasional" (up to 33% of the time) bending at the waist, occasional bending at the knees; occasional kneeling; occasional crawling and occasional stair climbing, no climbing of ladders, and no exposure to unprotected heights or hazardous machinery, and no *fine* vision.  The claimant is, however, able to read ordinary newsprint.

(Tr. 20)  At the hearing, the ALJ posed a series of hypothetical questions to the VE that included the limitations set forth above.  In the first set of questions, the ALJ omitted the "no *fine* vision" restriction.  In response to this set of questions, the VE testified that a person with such limitations could perform plaintiff's past job as a library clerk.  (Tr. 294-95)  The ALJ

subsequently asked a hypothetical question that included the vision limitation. The exchange between the ALJ and the VE is set forth below:

> **ALJ**: [G]oing back to the first hypothetical and add to that a limitation against fine vision which I will loosely describe as the inability to see newsprint, things of newsprint size or smaller so here would be no ability to read newsprint and there would be ability to read perhaps things printed in a larger type –
>
> **VE**: Uh-huh.
>
> **ALJ**: – but if we added that limitation to the first group of activities, the first hypothetical, would such a person be able to perform the position of library clerk, again either as actually performed or as generally performed?
>
> **VE**: It would be opinion that they would not.
>
> **ALJ**: So the visual limitation would be a critical limitation?
>
> **VE**: Correct.

(Tr. 299)  Based upon, or perhaps notwithstanding, the testimony of the VE, the ALJ concluded that plaintiff was capable of performing her past work as a library clerk and, therefore, that she was not disabled.

Plaintiff raises only one objection to the ALJ's determination that she is not disabled. She contends that the record conclusively demonstrates that she cannot read ordinary newsprint and, therefore, that she can no longer perform her past work as a library clerk. In advancing this argument, plaintiff relies entirely upon two medical reports that were not presented to the ALJ,

but were submitted in the first instance to the Appeals Council.[3]  As the Commissioner correctly notes in her brief, where, as here, new evidence is presented to the Appeals Council after the ALJ has rendered a decision, and the Appeals Council declines to review the ALJ's decision, the evidence may not be considered in determining whether substantial evidence supports the ALJ's decision.  See Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993); see also Cline v. Commissioner of Social Sec., 96 F.3d 146, 148 (6th Cir. 1996).  Rather, the evidence may only be considered for the limited purpose of determining whether remand to the Commissioner is warranted under sentence six of 42 U.S.C. § 405(g), a remedy that plaintiff has not requested.  Id.  Accordingly, plaintiff's reliance on these reports is misplaced.

     Notwithstanding the foregoing, the court concludes that this matter must be remanded for further proceedings due to inconsistencies in the ALJ's findings regarding plaintiff's visual impairment and the functional effect thereof.  As noted above, the ALJ concluded in his written opinion that plaintiff could not perform tasks that required "fine vision," but that she was "able to read ordinary newsprint."  (Tr. 20)  In light of the VE's testimony that an inability to read newsprint would preclude working as a library clerk, this latter finding was central to the ALJ's determination that plaintiff could perform her past work as a library clerk.  However, in posing

---

[3] The first report is a February 27, 2004 letter written by, Dr. Stephen Boskovich, an ophthalmologist, in which he indicated that plaintiff suffered from non-proliferative diabetic retinopathy with macular edema in both eyes, that she could not read newsprint as a result of her condition, and that she had scarring in the central macular region of each eye that would likely limit any improvement in her vision. (Tr. 260)  The second is a March 3, 2004 letter written by Dr. Christopher Herzog, also an ophthalmologist, stating, among other things, that plaintiff "is unable to see news print size letters due to the decline in her visual acuity."  (Tr. 261)  The court notes that plaintiff makes no mention in her motion for summary judgment of the fact that the ALJ did not have these reports at his disposal prior to rendering his decision.

the hypothetical to the VE, the ALJ defined the limitation against "fine vision" as an "inability to see newsprint, things of newsprint size or smaller so there would be no ability to read newsprint and there would be ability to read perhaps things printed in a larger type[.]"  (Tr. 298-99)  The ALJ's discordant findings regarding the "fine vision" limitation cannot be reconciled.  The VE's testimony that the hypothetical claimant could work as a library clerk was based upon a hypothetical that did not include a vision limitation.  The ALJ plainly found that plaintiff's vision was impaired and that a "fine vision" limitation was necessary to accommodate her impairments.  When that limitation, defined as an inability to read newsprint, was included in a hypothetical, the VE testified that the hypothetical claimant could not work as a library clerk.  At no point was the VE presented with the hypothetical claimant described in the ALJ's RFC determination, i.e., one who could not perform tasks requiring "fine vision," but who could nonetheless read newsprint.  In short, due to the puzzling discrepancy in the ALJ's statements regarding the "fine vision" limitation, there is no VE testimony in the record that supports the ALJ's conclusion that plaintiff could perform her past work as a library clerk.  Without such testimony, there is a lack of substantial evidence in the record to support the ALJ's determination that plaintiff is not disabled.  See Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987)(VE testimony may support finding that claimant is not disabled, but only where testimony is in response to hypothetical that fully and accurately describes the claimant's impairments).  The matter must therefore be remanded for further consideration of plaintiff's RFC and the effect of her visual impairments thereon.

On remand, the ALJ may consider the records submitted to the Appeals Council in the first instance. Though the records do not, by themselves, warrant a remand, there is no reason to exclude them from consideration on remand.[4] The records are now part of the administrative record, they are undoubtedly relevant to plaintiff's claim and, most importantly, they may assist the ALJ in determining the extent to which plaintiff's visual impairments affect her ability to engage in substantial gainful activity.

## IV. Conclusion

For the reasons stated above, the court finds that there is not substantial evidence in the record to support the ALJ's determination that plaintiff is capable of performing her past work and is thus not disabled. The court recommends that plaintiff's motion for summary judgment be **DENIED** to the extent she seeks an immediate award of benefits, that her motion otherwise be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that the matter be remanded for further proceedings consistent with this report and recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

---

[4] A "sentence six" remand is warranted where new, material evidence is available and there is good cause for the claimant's failure to introduce the evidence in the proceedings before the ALJ. Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (1984). While the reports plaintiff relies on may be new and material, plaintiff has not shown, nor even argued, that there was good cause for her failure to obtain the reports and present them to the ALJ in a timely manner. See Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986)("[I]n order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing"). Thus, the records, standing alone, do not warrant a remand.

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

        S/Virginia M. Morgan
        VIRGINIA M. MORGAN
Dated: June 8, 2005        UNITED STATES MAGISTRATE JUDGE

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record and the Social Security Administration by electronic means or U.S. Mail on June 8, 2005.

        s/Jennifer Hernandez
        Case Manager to
        Magistrate Judge Morgan